IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| ALEKSANDR SNETKOV, *Plaintiff,* vs. MARKWAYNE MULLIN, SECRETARY OF THE DEPARTMENT OF HOMELAND SECURITY; TODD BLANCHE, ATTORNEY GENERAL OF THE UNITED STATES; TODD M. LYONS, IN HIS OFFICIAL CAPACITY AS ACTING DIRECTOR OF IMMIGRATION AND CUSTOMS ENFORCEMENT; SYLVESTER ORTEGA, N HIS OFFICIAL CAPACITY AS ICE SAN ANTONIO FIELD OFFICE DIRECTOR; AND BOBBY THOMPSON, IN HIS OFFICIAL CAPACITY AS WARDEN OF SOUTH TEXAS ICE PROCESSING CENTER; *Defendants.* | § | SA-25-CV-01761-FB |

**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**

**To the Honorable United States District Judge Fred Biery:**

This Report and Recommendation concerns the Petition for Writ of Habeas Corpus ("the Petition") filed by Petitioner Aleksandr Snetkov [#1]. All pretrial matters in this case have been referred to the undersigned for disposition pursuant to Western District of Texas Local Rule CV-72 and Appendix C [#21]. The undersigned has authority to enter this recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, it is recommended that the Petition be **GRANTED IN PART**.

## I. Jurisdiction

This Court has jurisdiction over the Petition because Petitioner challenges the constitutionality of his continued detention and not the final order of removal underlying his detention. The Real ID Act divests federal courts of jurisdiction to consider challenges to removal orders, and federal courts lack jurisdiction to review discretionary decisions of the Attorney General. *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *Moreira v. Mukasey*, 509 F.3d 709, 712 (5th Cir. 2007) (citing 8 U.S.C. § 1252(a)(5)). Federal courts have jurisdiction, however, to adjudicate claims challenging the constitutionality of an alien's continued detention. *See Abdulle v. Gonzales*, 422 F. Supp. 2d 774, 776 (W.D. Tex. 2006) (citing *Gul v. Rozos*, 163 F. App'x 317, 2006 WL 140540, at *1 (5th Cir. 2006)).

## II. Background

Petitioner filed his Petition for Writ of Habeas Corpus on December 16, 2025, asking this Court to order his immediate release while he awaits his removal to Moldova. Respondents have filed a response in opposition to Petitioner's habeas corpus petition. The undersigned held an evidentiary hearing on June 30, 2026. The matter is ripe for the Court's review.

The relevant, undisputed facts in this case are established by the record and the representations of counsel at the evidentiary hearing. Petitioner was born in the Soviet Union in the city of Chișinău, now the Republic of Moldova, in May 1982. (Pet. Ex. 2.) Petitioner was admitted to the United States as a refugee on April 18, 1997. (Vasquez Decl. [#15-1], at ¶ 4.) He was issued a Notice to Appear ("NTA") for removal proceedings before an immigration judge after ICE encountered him on December 11, 2003, while he was detained at Yakima County Jail in the state of Washington. (*Id.* at ¶ 5.)

Since 2003, ICE has encountered Petitioner several times while detained in state custody pursuant to various criminal convictions. ICE next encountered Petitioner on February 2, 2006, while Petitioner was detained at the Renton City Jail in Washington. (*Id.* at ¶ 6.) Petitioner's removal proceedings were administratively closed by an immigration judge on June 12, 2006, due to his incarceration in state custody. (*Id.* at ¶ 8.) He was detained by ICE after he was released from state custody on January 4, 2007. (*Id.*) Petitioner's removal proceedings were administratively reopened on January 10, 2007, and, on January 18, 2007, an immigration judge ordered his removal to Moldova. (*Id.* at ¶ 9, 11.) Soon thereafter, ICE submitted a travel document request to the Embassy of Moldova in Washington, D.C. (*Id.* at ¶ 14.) ICE completed a 90-day Post Order Custody Review ("POCR") and issued a decision to continue Petitioner's detention on May 1, 2007. (*Id.* at ¶ 15.) Two weeks later, the Embassy of Moldova issued a letter stating that Petitioner was not a Moldovan citizen and could not be issued travel or identification documents. (*Id.* at ¶ 16.) Petitioner was released under an Order of Supervision ("OSUP") on June 5, 2007. (*Id.* at ¶ 17.)

Petitioner was re-detained by ICE on March 5, 2008, after being released from state custody. (*Id.* at ¶ 18.) ICE submitted another travel document request to the Embassy of Moldova on April 14, 2008. (*Id.* at ¶ 19.) Petitioner was again released from ICE custody under an OSUP on May 8, 2008, after the travel document request was again denied. (*Id.* at ¶ 20.) In early November 2011, Petitioner was re-detained by ICE and released just a week later under yet another OSUP. (Habeas Pet. [#1], at ¶ 24; Nov. 2011 OSUP [#1-1].)

Petitioner has consistently reported to ICE since 2011 and has had no further engagement with the criminal justice system. Recently, on November 17, 2025, Petitioner reported to ICE as required by his OSUP. At this appointment, he was served with a Notice of Revocation of

Release and taken into ICE custody. (Vasquez Decl. [#15-1], at ¶ 21.) ICE submitted a new travel document request to the Consulate of Moldova on January 5, 2026. (*Id.* at ¶ 23.) The Consulate of Moldova in Chicago issued a denial letter for Petitioner's travel document request after failing to identify any records establishing Petitioner's Moldovan citizenship. (*Id.* at ¶ 25.) ICE requested "third country removal assistance" from a Detention and Deportation Officer following the Moldovan Consulate's denial of the travel document request. (*Id.* at ¶ 26.) ICE completed a 90-day POCR and issued a decision to continue Petitioner's detention on February 18, 2026. (*Id.* at ¶ 29.) As of March 9, 2026, ICE was "working to identify a third country of removal." (*Id.* at ¶ 32.)

As of the time of the writing of this Report and Recommendation, Petitioner remains in ICE custody. In the seven and a half months since Petitioner was detained in mid-November 2025, there has been no progress by Respondents in obtaining travel documents for Petitioner for removal to Moldova or to any other country. Respondents reiterated during the hearing that they submitted a travel document request to a Moldovan Consulate in January 2026, but conceded that this request was denied—as were travel document requests submitted to the Moldovan Embassy on two separate occasions in 2007 and 2008. Respondents further conceded that Petitioner is not a citizen of Moldova and that no other country has been identified for his removal.

## III. Analysis

Petitioner argues that his prolonged detention following the entry of a final order of removal against him violates his Fifth Amendment substantive and procedural due process rights and 8 U.S.C. § 1231(a)(6) as interpreted by the Supreme Court in *Zadvydas v. Davis*, 533 U.S.

678 (2001).[1] Petitioner asserts that his removal is not foreseeable because he is stateless and, as a result, Moldova will not issue him travel documents. Respondents argue that Petitioner's detention is mandatory until his removal pursuant to 8 U.S.C. § 1231(a)(6). They further argue that Petitioner's reliance on *Zadvydas* is premature because, at the time the Petition was filed, he had been detained for fewer than six consecutive months. Therefore, they argue, the burden of proof does not shift to Respondents to show there is a significant likelihood of removal in the reasonably foreseeable future. Respondents further contend that, even if the burden were to shift, they could show that ICE has removed noncitizens to Moldova.

The undersigned will not address whether Respondents' arguments related to the prematurity of Petitioner's *Zadvydas* claim were viable at the time the Petition was filed. Given that Petitioner has now been continuously detained for seven and a half months with no sign of progress by Respondents in establishing a schedule for his removal to Moldova or any other country, the District Court should find that Petitioner is entitled to relief per his substantive due process claim under *Zadvydas*.

In *Zadvydas*, the Supreme Court limited detention beyond the initial 90-day removal period to a period "reasonably necessary to bring about the alien's removal from the United States." 533 U.S. at 689. The Court held that detention for six months is "presumptively reasonable," but beyond six months, if removal is no longer reasonably foreseeable, continued

---

[1] Petitioner further argues that Respondents' revocation of his OSUP without providing reasons for the revocation or the opportunity to respond as required by the applicable regulations, found at 8 C.F.R. §241.13(i), contravenes U.S. Immigration and Customs Enforcement's own policies in violation of the Administrative Procedure Act ("APA"). Petitioner further argues that Respondents' revocation of his OSUP without a hearing or additional oversight by an impartial adjudicator violates his procedural due process rights guaranteed by the Fifth Amendment. Because this Report and Recommendation concludes that Petitioner is entitled to release based on his *Zadvydas* claim, this Report and Recommendation does not reach his APA or procedural due process claims.

detention is not warranted. *Id.* at 701. Under *Zadvydas* and the regulations implementing it, if a noncitizen provides "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," the Government must respond with evidence sufficient to rebut that showing. *Id.*; 8 C.F.R. § 241.13(a). If a noncitizen is not likely to be removed in the reasonably foreseeable future, the noncitizen must be released unless continued detention is justified by one of the "special circumstances" set forth in 8 C.F.R. § 241.14. *Id.* § 241.13(e)(6).

The burden of demonstrating there is no significant likelihood of removal generally rests with the noncitizen. 533 U.S. at 701. Petitioner meets this burden under the facts of this case. He contends there is no significant likelihood of his removal to Moldova in the reasonably foreseeable future because he is not a Moldovan citizen (and, in fact, is stateless) and because Respondents have been unsuccessful in removing him to that country since he was ordered removed more than 19 years ago. District courts within the Fifth Circuit have found that stateless petitioners met their burden under *Zadvydas* to show "good reason" to believe there was no significant likelihood of their removal in the reasonably foreseeable future where they were ordered removed to a country of which they were not a citizen. *See, e.g., Willis v. Frink*, No. 4:26-cv-01439, 2026 WL 1270540, at *2 (S.D. Tex. Mar. 19, 2026) (granting habeas relief to a stateless petitioner who was born in the former Soviet Union and ordered removed to Russia, which did not recognize her as a citizen); *Thargay v. Warden,* H-26-1328, 2026 WL 1469896, at *1 (S.D. Tex. May 26, 2026) (granting habeas relief to a stateless Tibetan ordered removed to India or China). The record reflects that ICE has tried and failed to procure travel documents to effectuate Petitioner's removal to Moldova on three separate occasions: in May 2007, May 2008, and January 2026. Moldovan consular authorities have repeatedly denied ICE's travel document

requests because, as Respondents conceded during the evidentiary hearing, Petitioner is not a citizen of Moldova.

Respondents fail to provide evidence sufficient to rebut Petitioner's showing. Beyond the denied travel document request submitted to the Consulate of Moldova, the record reflects only that ICE was "working to identify a third country of removal" as of early March 2026. (Vasquez Decl. [#15-1], at ¶ 32.) Respondents conceded during the evidentiary hearing that no further progress has been made in identifying a third country willing to accept Petitioner for removal, nor did they offer evidence of any outstanding travel document request submitted to any country.[2] Petitioner was ordered removed to Moldova, a country of which he is not a citizen, nearly two decades ago. He has been detained by ICE and subsequently released under OSUPs on several occasions, the most recent of which was issued over 14 years ago. Respondents have offered no evidence to show that efforts to remove Petitioner would be reasonably foreseeable when it was not before.

What's more, efforts to remove Petitioner to a third country "would likely be delayed by proceedings contesting his removal to the third country finally identified." *Mogos v. Thompson*, No. 5:26-CV-0740-JKP, 2026 WL 475079, at *5 (W.D. Tex. Feb. 13, 2026) (quoting *Villanueva v. Tate*, 801 F. Supp. 3d 689, 703 (S.D. Tex. 2025)). These circumstances further demonstrate that Petitioner's removal is not likely in the reasonably foreseeable future. *Id.* (citing *Zavvar v. Scott*, No. 25-2104-TDC, 2025 WL 2592543, at *8 (D. Md. Sept. 8, 2025)). Petitioner's continued detention therefore violates due process per the Supreme Court's holding in *Zadvydas*. Accordingly, the District Court should order Petitioner's release.

---

[2] Even if ICE did have outstanding requests with third countries, that fact alone would be "insufficient to show that [Petitioner's] removal is likely to occur in the reasonably foreseeable future." *Trejo v. Warden of ERO El Paso E. Mont.*, 807 F. Supp. 3d 697, 707 (W.D. Tex. 2025); *Medellin Martinez v. Bondi, et al.*, No. SA:25-CV-1319-OLG, at 5 (W.D. Tex. Nov. 21, 2025).

## IV. Conclusion and Recommendation

Based on the foregoing, the undersigned **recommends** that the Petition for Writ of Habeas Corpus filed by Petitioner Aleksandr Snetkov [#1] be **GRANTED IN PART** and that Respondents be ordered to **RELEASE** Petitioner from their custody under conditions compliant with statutory requirements contained in 8 U.S.C. §1231(a)(3). The undersigned further recommends that Petitioner's request for attorneys' fees and costs under the Equal Access to Justice Act be **DENIED.** *Barco v. Witte,* 65 F. 4th 782, 785 (5th Cir. 2023), *cert. denied*, 144 S. Ct. 553 (2024).

It is **FURTHER ORDERED** that the parties confer on conditions of release and submit joint proposed conditions for Petitioner's post-removal supervision that comply with the relevant statutory provisions and regulations within **seven days** to be considered by the District Court. Given that no evidence of record indicates that Petitioner was in noncompliance with the terms of his most recent Order of Supervision, the undersigned recommends that the District Court release Petitioner on conditions of release that reflect those in effect prior to his current detention.

## V. Instructions for Service and Notice of Right to Object/Appeal

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. **During the evidentiary hearing held before the undersigned on June 30, 2026, the parties agreed to shorten the deadline for filing objections to expedite resolution of this case, and specifically, that they would file any objections within seven days after being served a copy of the report and recommendation**. Written objections to this

report and recommendation must therefore be filed **within seven (7) days** after being served with a copy of same. The party shall file the objections with the Clerk of Court and serve the objections on all other parties. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court. *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root*, *Inc.,* 200 F.3d 335, 340 (5th Cir. 2000). Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the un-objected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

SIGNED this 2nd day of July, 2026.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE